HEMPSTEAD *vs.* NEW YORK CENTRAL RAIL ROAD COMPANY.

Where goods are delivered to a carrier, marked for a particular destination, without any directions as to their transportation and delivery, save such as may be inferred from the marks themselves, the carrier is only bound to transport and deliver them according to the established usage of the business in which he is engaged.

The plaintiff and his assignors delivered to the Union Express Company, at Detroit, 319 kegs and 15 barrels of butter, to be transported to D., A. & R. Front street, New York. The packages were all marked " J. A. B., 17 Water street, New York." The butter had been shipped from Chicago to Detroit, consigned to B., New York, and marked " J. A. B." At Detroit B. transferred his interest to N. & H., and by them the consignment was changed to D., A. & R., New York. The Union Express Company received the butter, at Detroit, for transportation, and delivered the same to the Great Western Railway Co., to be carried by them to Suspension Bridge, in pursuance of a standing agreement for the transportation by the said rail road company of such freight as the Union Express Company should deliver to them for transportation. That company way-billed the butter to the consignees, carried it to Suspension Bridge, and there delivered it to the defendant, a common carrier of freight between Suspension Bridge and Albany, and took receipts. No other contract was made by the defendant, in respect to the transportation of the butter, except that implied from the receipt, and the fact that the butter was delivered to the defendant. The defendant made freight way-bills of the butter, which showed that the butter was in care of the Union Express Company. A part of the kegs had D. A. & R. as consignees, and 142 kegs and 15 barrels had as consignee " J. A. B., New York." The defendant carried the butter safely over its road, to Albany, and delivered the same to the Hudson River Rail Road Company, a responsible carrier of freight between New York and Albany. The packages marked " J. A. B." were never delivered to D., A. & R. No express con-

tract, by the defendant, to carry the butter to New York, was either alleged or proved. The court found that the defendant was a common carrier of freight from Suspension Bridge to Albany, but that it did not contract as a common carrier to transport the butter to New York and deliver the same to D., A. & R. The defendants, however, had notice that D., A. & R. were the consignees.

*Held,* 1. That by the delivery of the property to the Hudson River Rail Road Company, the liability of the defendant terminated, unless it omitted to give the necessary instructions to the latter company as to the delivery of the property.

2. That the defendant must be held to know who the consignees were, and it was bound to communicate that information to the Hudson River Rail Road Company ; and that a failure to do so would subject the defendant to such damages as should result from its neglect.

3. That in the absence of any proof, upon that subject, it must be presumed that the defendant accompanied the delivery of the property to the Hudson River Rail Road Company with all such instructions as the law required to be communicated ; and that an action against the defendant as a common carrier, to recover damages for the loss of the butter, could not be sustained.

4. That upon the delivery of the property to the Hudson River Rail Road Company the liability of the defendant, as a common carrier, ceased, and its further liability, if any, was as a forwarder.

What must be averred, and proved, in an action against a rail road company as a forwarder, under such circumstances.

To enable a party to recover against a rail road company that would not otherwise be liable, under section 53 of the general rail road act, (1 *R. S. 4th ed. p.* 1240,) the liability must be averred in the complaint. If no such case is contemplated at the time of commencing the action, or stated in the complaint, the whole nature and form of the action cannot be afterwards changed, in order to make the defendant liable under that section.

APPEAL from a judgment rendered at a special term, after a trial at the circuit before a judge without a jury. The pleadings were in substance as follows : The complaint alleged, substantially, that on the 2d day of February, 1855, the plaintiff caused to be delivered to the defendant, as common carrier, 142 firkins and 15 barrels of butter, of the value of $3051.17, to be safely conveyed and transported from Suspension Bridge to New York, and there delivered to the plaintiff, conformably to his directions in that behalf. The breach alleged was that the defendant did not convey to New York and there deliver the butter to the plaintiff. The answer, first, put in issue

each and every allegation in the complaint; and secondly, averred that on the 15th day of August, 1854, the defendant made a contract with the Union Express Company, engaged as common carriers in the transportation of freight between Detroit and New York, by which the defendant agreed with said express company to furnish cars for the transportation of goods consigned to said express company, and delivered by its agents at either of the warehouses of the defendant at Albany, Buffalo or Suspension Bridge, and that the defendant would *forward such through freight* as the said express company might deliver at the aforesaid warehouses, with all possible dispatch, by the first freight train, after loading the same. It was further provided, that *messengers in charge of the said express company's freight might accompany the same free of charge, for the purpose of preventing delay on the road, and generally aiding in facilitating the transit of goods.* It was further provided, that all reasonable facilities should be given by the said express company to enable it to keep its lots of freight together from the point of shipment to the place of destination. It was further agreed, that when freight was received from other lines, the defendant would pay back charges thereon, provided the bills of charges accompanied and represented distinct lots of goods, *and would forward the same across the defendant's road* at the rates furnished the defendant by the express company, which fares were not to be less than the regular tariff rates of the defendant, together with the amount of such back charges as the defendant should pay upon the same, and that the excess of charges over and above the tariff rates of the defendant were to be paid monthly to the express company. The answer further averred, that this contract had been since its date, and was still, in force. That the butter mentioned in the complaint was, on or about the second day of March, 1855, at Detroit, delivered by the persons claiming to be owners, to the said Union Express Company for transportation to the city of New York, and that the same was so transported. That pursuant to the contract with

the express company, the defendant furnished cars at Suspension Bridge for said company, and in which the butter was under the said contract safely transported to Albany, and then and there safely and properly delivered to the Hudson River Rail Road Company. The cause was tried before Mr. Justice DAVIES without a jury, and he gave judgment for the defendant.

The leading facts of the case, as disclosed by the evidence and found by the justice, are as follows: The defendant is a rail road corporation, and a common carrier of freight between Suspension Bridge and Albany, the termini of its road. On the 15th of February, 1855, the plaintiff and his assignors delivered to the Union Express Company at Detroit, Michigan, 319 kegs and 19 barrels of butter, to be transported to Darling, Albertson & Rose, Front street, New York. The packages of butter were all marked "J. A. B., 17 Water street, New York." The butter had been shipped from Chicago to Detroit, consigned to John A. Bidwell, 17 Water street, New York, and marked J. A. B. At Detroit Bidwell transferred his interest to Norton & Hempstead, and by them the consignment was changed at Detroit to Darling, Albertson & Rose, Front street, New York. The Union Express Company is an association of express forwarders and common carriers of freight, and received the butter at Detroit, under a contract to transport the same to New York, and deliver to Darling, Albertson & Rose. On the 19th day of February, 1855, the Union Express Company delivered the butter at Windsor, Canada West, to the Great Western Railway Company, whose road runs from Windsor to Suspension Bridge, for transportation. Said company way-billed the butter to said consignees, carried it to Suspension Bridge, and there, on the 27th of February, 1855, delivered it to the defendant, and took receipts. No other contract was made by the defendant, in respect to the transportation of the butter, except that implied from the receipt, and the fact that the butter was delivered to the defendant. On the 2d of March, 1855, the defend-

ant made freight way-bills of said butter, which remained in the hands of its agents, and accompanied the butter as far as defendant's warehouse in Albany. These bills show that the butter was in care of the Union Express Company. There were two car loads; one, having 177 kegs, had Darling, Albertson & Rose as consignees; the other, containing the 142 kegs and 15 barrels, had, as consignee, "J. A. B., New York." The defendant hauled the butter safely over its road to Albany, and delivered the same to the Hudson River rail road, and took receipts therefor. The Hudson River Rail Road Company was a responsible carrier of freight between New York and Albany. The 142 firkins and 15 barrels of butter in question were never delivered to Darling, Albertson & Rose. Each of the packages was marked "J. A. B., New York." That the defendant did not contract as common carrier to transport the butter to New York, and deliver the same to Darling, Albertson & Rose. That the butter was delivered to the defendant on behalf of the Union Express Company, and was transported over the defendant's road, under and subject to the provisions of the agreement set up in the answer, then subsisting between the defendant and the express company. The justice decided that the whole duty of the defendant was discharged by the safe delivery of the butter to the Hudson River Rail Road Company. That under the contract with the Union Express Company, the defendant discharged its whole duty by hauling the butter to Albany, and delivering the same to the Hudson River Rail Road Company. That it was not responsible to the plaintiff for the non-delivery of the butter to Darling, Albertson & Rose. Sundry exceptions were taken by the plaintiff.

*Robert Dodge,* for the appellant. I. The defendant contracted with the plaintiff's agent to transport the butter, in the complaint mentioned, from Suspension Bridge to New York, and deliver it to Darling, Albertson & Rose. The receipt given by the defendant upon delivery to its agent of the

butter, in connection with its course of trade, is evidence of the contract. It specifies the number of packages of the butter, and that it was from Windsor, and for "*Darling, Albertson & Rose,* Front street, New York."

II. Whether the defendant was a carrier or forwarder merely, beyond Albany on the route to New York, it was responsible for the loss of the butter. (1.) If a *carrier,* it was bound to deliver the butter according to the instructions. The marks J. A. B. afforded no reason for changing its destination. For aught that was shown by the defendant, they were trade-marks of the consignor. (*Schrœder* v. *Hudson River Rail Road Co., 5 Duer, 55. 6 Binney,* 129.) (2.) If a *forwarder merely,* it was bound to forward the butter, according to the instructions, to Darling, Albertson & Rose. It did not discharge its duty by simply delivering it to the Hudson River rail road without a direction as to whom to deliver it. (3.) By chapter 270 of the laws of 1847, the defendant was answerable for the loss occasioned upon any of the lines of rail road between Suspension Bridge and New York. The two lines were "connected" at Albany. The New York Central terminates at Albany, and by the charter of the Hudson River Rail Road Company, it terminates at Albany, by means of its ferry, authorized in the act. (*Laws of* 1846, *ch.* 216, *title and* § 1.) The fact of connection also appears in the evidence. The receipts show the butter was delivered *at Albany* to the Hudson River rail road, and there is no evidence to the contrary, or to warrant the finding that it was delivered at Greenbush.

III. It distinctly appeared that the negligence of the defendant's servants caused the loss of the butter. It was first misdirected in the defendant's way-bill from Suspension Bridge, where it is entered as for "J. A. B.," New York. The delivery was again made at Albany to the Hudson River Rail Road Company, with directions to deliver it, not to Darling, Albertson & Rose, New York, but to "J. A. B.," New York. This appears from the receipts.

IV. The contract between the Union Express Company and

Hempstead *v*. New York Central Rail Road Co.

the defendant does not vary the liabilities of the defendant. (1.) The Union Express Company were *forwarders*, and not carriers. The testimony of G. E. Jarvis, on cross-examination, shows "their business is *forwarding* freight." The receipt given by the express company's agent is of the butter, "*to be forwarded.*" There is no evidence to show the express company was a carrier. (2.) The contract between the defendant and the express company, does not indicate that the express company was not a mere agent to forward freights.

V. The justice who tried the cause erred in his finding that the Union Express Company is an association of common carriers, and that it received the butter under a contract to deliver it to the consignees. There is no evidence in the case that the Union Express Company are carriers.

VI. As forwarders, the Union Express Company were the agents of the plaintiff, and the fact that by their contract with the defendant the agents of the company were permitted to accompany the freight forwarded, did not excuse the defendant from its responsibility for the safe carriage and delivery of the butter. (*Hollister* v. *Nowlen*, 19 *Wend.* 236. *Cole* v. *Godwin*, *Id.* 251. *Merch. Bank* v. *Steam Nav. Co.*, 6 *How.* 344. *Dorr* v. *Same*, 1 *Kern.* 485. *Stoddard* v. *Long Island R. R.*, 5 *Sandf.* 180. *Green* v. *Clarke*, 2 *Kern.* 343.) There was no duty on the part of the agents, the express company or the plaintiff, to watch the butter and see if the defendant did not misdirect or misdeliver it. The butter was exclusively in the defendant's possession, and not in that of the company. The course of business and the receipts show this, and they are consistent with the contract between the express company and the defendant. There was no proof that either party ever acted under this alleged agreement, or that the same existed in force at the time of this shipment. There is no contract in form proved. It is at most a mere license to the express company, and not even their assent is shown. It is at most a mere offer, a proposition, and there is no pretense that the owner of the goods, the appellants, had any

notice thereof; it is kept secret, to be used by the respondent as the means of evading its legal liability. The alleged agreement offered by the defendant on trial, and admitted by the justice, was irrelevant, immaterial and inadmissible, and should have been excluded. The appellant's exception, therefore, was well taken.

VII. The justice trying the cause erred in each of his conclusions of law; and the exceptions thereto, and to his findings of facts, are well taken. (1.) The defendant's duty was not discharged by delivering the butter to the Hudson Hudson River Rail Road Company. He delivered it to the Hudson River Rail Road Company to carry to some other person than the consignee, and thus rendered it certain that the consignee would never receive it. (2.) It did not discharge its duty by carrying the butter to Albany, and making the delivery it did. It might as well have delivered it to any person at Albany calling himself J. A. B. (3.) It is responsible for the non-delivery of the butter to Darling, Albertson & Rose, and the plaintiff was entitled to judgment.

*John H. Reynolds,* for the respondent. I. The defendant was a common carrier between Suspension Bridge and Albany, and not elsewhere. The butter was delivered to it at Suspension Bridge, for Darling, Albertson & Rose, New York. There was no special contract with respect to the transportation and delivery of the butter. It was simply delivered by the Great Western Railway, and received by the defendant; the receipt indicating that the butter was intended for Darling, Albertson & Rose, New York, and the only contract which arises is that which is implied by law in such a case. (1.) The obligation assumed by the defendant under such circumstances was that of common carriers over its road to Albany, and from thence as *forwarders* merely, and the liability of the defendant was discharged by delivery of the butter to the Hudson River Rail Road Company, or to any other solvent carrier, for transportation to New York. This is the settled rule of

the American courts. (*Van Santvoord* v. *St. John*, 6 *Hill*, 157. *Farmers' & Mechanics' Bank* v. *Ch. Trans. Co.*, 16 *Verm. R.* 52. 18 *id.* 131. 23 *id.* 186. *Hood* v. *New York and New Haven R. R. Co.*, 22 *Conn. R.* 1, *S. C.* 22 *id.* 502. *Nutting* v. *Conn. R. R.*, 1 *Gray*, 502. *Jenneson* v. *Camden and Amboy R. R.*, *Am. Law R.* 234. *The Naugatuck R. R. Co.* v. *The W. Button Co.*, 22 *Conn. R.* 468.) (2.) There is nothing in this case to show that the defendant was a carrier beyond its terminus, or that in this instance it agreed to become so, or that it had any connection in the business of transportation with any other carrier; hence there is nothing upon which an implied contract to carry beyond its terminus can be predicated. In the case of corporations, authorized by law to carry on their business of common carriers between certain points, it is not to be presumed that they are exceeding their powers and carrying on business outside of their legal limits. (3.) It may be admitted that the English rule differs in some respects from that adopted by the American courts. But even under the English rule this action could not be maintained against the defendant. For by that rule it is the *first* carrier who receives the goods marked for a particular destination, that is held as a carrier for the whole route. That rule, applied here, would make the Great Western Railway Company alone responsible to the plaintiff. (*Hodges on Railways*, 615. *Muschamp* v. *Lancaster and Preston R. R.*, 8 *Mees. & Wels.* 241. *Watson* v. *Ambergate, Not. and Boston R. R.*, 3 *Eng. Law and Eq.* 49. *Scotthorn* v. *South Staffordshire R. R.*, 18 *id.* 553. *Wilson* v. *York N. and B. R. R.*, *Id.* 557.)

II. If the contract implied by law be such as is contended for, that of a carrier to Albany, and from thence mere forwarders, then the case made by the complaint is not in any material respect sustained. The cause of action stated in the complaint is upon a contract at Suspension Bridge to carry over the whole route to New York, and there deliver to the consignee, and a breach in not delivering is alleged. No such contract is made out in substance or legal effect, and the com-

plaint is "unproved in its entire scope and meaning." (*Code,* § 171.) (1.) It is not a variance which can be disregarded, nor can it be remedied by amendment. The breach alleged in the complaint is *in not carrying to New York and delivering to the consignees*. No contract to carry to New York and deliver to the consignees being proved, the whole cause of action, in its entire scope and meaning, fails. (2.) If the contract had been set out in the complaint as it really was, to carry to Albany and then deliver to another safe carrier for transportation to New York, the whole character of the action would have been changed. A different rule of liability would obtain, and different evidence would have been required to maintain such a complaint, and this serves to illustrate the difference between the case stated in the complaint and that which the plaintiff attempted to prove. (3.) The complaint did not, in the remotest degree, indicate the real nature of the plaintiff's case. It cannot be regarded as a good pleading or any proper or intelligent statement of the case, except it be held that the proof makes out a contract by the defendant to carry beyond its terminus and deliver in New York. If the plaintiff has failed in this, the whole action is gone. (4.) The whole case (saving the effect of the contract with the Union Express Co.) turns upon the nature of the contract to be implied by law from the mere receipt of the butter at Suspension Bridge, consigned to New York. If the proof makes out the contract alleged in the complaint, the proof that it was not delivered to the consignees in New York makes out the case. If, on the contrary, the law implies no such contract to carry to New York and there deliver, then no case is made out, and the action wholly fails; because if no contract to deliver in New York was made, the defendant is certainly not liable in damages by showing that the goods were not delivered in New York. If the contract made was violated upon a proper complaint, sustained by the requisite proof, the defendant might be held responsible for such default. (5.) If our construction of the implied contract prevail, then we insist

that the proof does not make out any violation by the defendant, and no recovery can be had. The defendant did carry the butter safely to Albany, and did there deliver it to the Hudson River Rail Road Company. So far there is no dispute nor room for any. In the absence of any pretense of a misdirection of the goods, there could be no doubt but that the liability ceased. But it is said, as the ground upon which the defendant is liable, that the consignment was changed at Suspension Bridge from "Darling, Albertson & Rose," to "J. A. B.," New York, by the defendant's agent. The only proof is, on this point, the "freight way-bill," between Suspension Bridge and Albany, over the defendant's road, in which "J. A. B., New York," is placed where it is claimed "Darling, Albertson & Rose" should have been. This way-bill purports to be, and is, a way-bill over the defendant's road between Suspension Bridge and Albany, and never went beyond Albany, and there is no proof that this paper was ever seen by any agent of the Hudson river road, and it cannot well be inferred that they were misled by it. Nor is there any proof that the butter went into the hands of "J. A. B." All we know is, that it did not reach "Darling, Albertson & Rose." We may as well infer, upon the proof, that the butter is in the Hudson river, as that it went to "J. A. B." (6.) Any misdirection of the butter would not subject the defendant to an action, unless it contributed to the loss. Here it is not shown that it did. Our way-bill never went beyond Albany, and it is not shown that the butter went into the wrong hands, which is the only consequence of a misdirection. If the plaintiff relies upon the misdirection, he should show that by reason of it the goods failed to reach the proper party. If the goods were stolen at Rhinebeck from the Hudson River rail road, it would be absurd to hold the defendant liable, because an agent at Suspension Bridge put the name of a wrong consignee on the way-bill. To make the defendant liable for a negligent or improper direction being given to the goods, it must be shown that the loss, which did happen, was in some degree

occasioned by the negligent act complained of. In this respect
there is a fatal defect in plaintiff's proof. So that if it be that
the defendant was a mere *forwarder* from Albany, it is not
shown that any misdirection was given to the Hudson river
road, or if given, that it in any respect contributed to the
loss. The *onus* was in both these particulars upon the plain-
tiff; as a *forwarder* is only responsible for *negligence,* and the
party alleging it must *prove* it, to make out his case. It can-
not in this, more than in any other case, be inferred. (*Mid-
land Railw. Co.* v. *Bromley,* 33 *Eng. Law and Eq.* 235.)
(7.) The receipts taken of the Hudson River rail road are
each in the following form : "Rec'd of N. Y. C. R. the fol-
lowing property, which we agree to forward *as addressed,*"
"*marked* J. A. B., N. Y. ;" "description of property," butter,
&c. This does not show any *misdirection.* The *address* of
the goods was different from the *marks.* They were all marked
"J. A. B.," but really *addressed* at Detroit to "Darling, Al-
bertson & Rose." The marks on the property were correctly
given in the receipts, but what *address* for the property was
given by the defendant to the Hudson River rail road is not
shown. It is presumed to have been the correct one. The
receipts were taken by the cartman, as a load was delivered.
The direction as to whom the property is to be forwarded is
a separate transaction, and that direction should contain a
statement of the back charges for transportation, and the name
of the consignee and place of destination, &c. A receipt of
the property thus marked affords no more evidence of a wrong
direction as to its destination, than is afforded in the freight
invoice of the Great Western road, where the marks "J. A. B."
also appear. The "mark" in such case only serves to identify
the goods. It is obvious, also, that if any mistake occurred
in the direction of the goods, it arose in some degree from the
fault of the owners, by permitting the marks "J. A. B., N. Y.,"
to remain on the packages, after the consignment had been
changed at Detroit. This was negligence of the owners, and
if in consequence of this there was a misdelivery, the carrier

Hempstead *v.* New York Central Rail Road Co.

is not responsible. (*Angell on Carriers,* § 136. *The Huntress, Davies' Dist. C. Rep.* 83.) For these reasons, and independent of the contract with the express company, the defendant is not responsible, and the judgment should be affirmed.

III. It is further submitted that by virtue of the contract with the express company, under which the defendant received and carried the butter over its road, the plaintiff was not entitled to recover. (1.) That the Union Express Company contracted with the owner to transport the goods to New York is proved and undisputed. That the butter was transported by the defendant under its contract with the express company is also beyond dispute. The plaintiff, in this aspect of the case, stands precisely in the same position as the Union Express Company would have done if they had brought this action. (*The New Jersey Steam Nav. Co.* v. *The Merch. Bank of Boston,* 6 *How. U. S. R.* 344. *Stoddard* v. *The Long Island R. R. Co.* 5 *Sandf. S. C. R.* 180.) (2.) By this contract the defendant agrees "to furnish cars for the transportation of goods consigned to said express company and delivered by the agents of said company at our warehouses, at Suspension Bridge, Buffalo and Albany," and also, they "farther agree to *forward* all such *through* freight as the said express company may deliver at the above named warehouses with all possible dispatch," &c. And "*messengers in charge of the said express company freight may accompany the same free of charge, for the purpose of preventing delays and aiding generally in the transit of the goods.*" And "*when freight is received from other lines,* this company will pay the back charges thereon, (provided the bills of charges accompany and represent distinct lots of goods,) and will *forward* the same across our road at the rates furnished by the said express company," &c., and then monthly settlements are to be made. (3.) It is obvious that this contract intended to, and does, restrict and limit in some respects the liability of the defendant as common carrier with respect to freight of the express

company.   A carrier may thus limit his common law responsibility.  (*Dorr* v. *The Steam Nav. Co.* 1 *Kern.* 485.)   The provision that the rail road company will *furnish cars;* that messengers of the express company *in charge* of the freight may accompany it free of charge, to aid generally in its transit, and that freight received from other lines will be *forwarded* over defendant's road, shows that all such freight was in the care and management of the immediate agents of the express company, and that the rail road company had only to *furnish* cars, and *forward* the freight thus attended *over its road.* No duty of directing, managing or *consigning* the freight, was imposed upon the defendant.   That duty was to be attended to by the immediate agents of the express company, by whom it was accompanied, *and in whose charge it was.*   The freight way-bill over the defendant's road stated the butter to be "in care of the Union Express Company," and it passed over in such care.   The defendant hauled it to Albany and delivered it to the Hudson River road, and that certainly discharged the whole duty under the contract.   The agents of the express company gave the Hudson River road such directions as they pleased, or attended it in person on its journey from Albany to New York.   If they failed to do either, or gave a wrong direction, it was their fault, not the defendant's, as under the contract no such duty was assumed.   If this be the meaning of the contract, there can be no doubt but that the defendant is excused from all liability for misdirection or misdelivery in New York.   That the immediate agents of the express company *in charge* of the freight could give it such directions as they pleased, is quite clear, and in that the defendant had no concern and owed no duty.   Besides, the contract plainly implies that the defendant was a mere forwarder or agent, furnishing the cars and motive power for hauling the freight and messengers over the road, and that being done, all its duty and responsibility ended.

Upon this view the case is clearly against the plaintiff, and the judgment should be affirmed.

*By the Court,* MULLIN, J.    I shall assume, for the purposes of this case, that the plaintiff was the owner of the property in controversy, and that it was delivered to the defendant at Suspension Bridge, with notice that Darling, Albertson & Rose, Front street, New York, were the consignees.    The plaintiff alleges in his complaint that the said property was delivered to the defendant at Suspension Bridge to be safely and securely carried, conveyed and transported by the defendant from Suspension Bridge to the city of New York, there to be safely and securely delivered in good order and condition, for the plaintiff, conformably to his orders and directions in that behalf.    And the plaintiff further alleges, that the defendants so carelessly and negligently conducted themselves in the premises that said goods were lost.

No express contract by the defendant to carry said property to New York is either alleged or proved.    It is found by the justice who tried the cause that the defendant was a common carrier of freight from Suspension Bridge to Albany, the termini of their rail road, and that the defendant *did not contract* as a common carrier to transport the butter to New York and deliver the same to Darling, Albertson & Rose.    The court also found that the defendant hauled the said butter safely over its road to Albany, and safely delivered the same to the Hudson River Rail Road Company, and took receipts therefor.    The liability of the defendant must rest, therefore, on the contract which the law implies, or the duty which the law imposes upon it, by the receipt of property to be carried over its road.

The court of errors in *Van Santvoord* v. *St. John,* (6 *Hill,* 157,) defines the duty of the carrier in these words :    "Where goods are delivered to a carrier marked for a particular destination, without any direction as to their transportation and delivery save such as may be inferred from the marks themselves, the carrier is only bound to transport and deliver them according to the established usage of the business in which he is engaged, whether the consignor knew of the usage or not."

It was further held, in that case, that where goods marked for Little Falls were delivered to a line of tow boats, running between New York and Albany, for transportation, and the goods were carried to Albany and then delivered to a canal line of boats to be transported to Little Falls, and it appeared that this was the usual course of business, the defendant had discharged its whole duty, and was not liable for a loss happening between Albany and Little Falls.

I cannot perceive any difference in principle between the case cited and the case in hand, and it must therefore be held conclusive, unless there is some fact in this case not yet alluded to which will distinguish it from *Van Santvoord* v. *St. John.* I will now allude to the only remaining facts that can be relied on to take this case out of the principles of the case cited; and they are these. That the goods, when they were delivered to the Great Western railway, to be carried from Detroit to Suspension Bridge, were entered on the freight bills as consigned to Darling, Albertson & Rose, New York. The receipts given by the defendant's agent to the Great Western road were upon the freight bill, or a copy thereof, in which the goods were entered as consigned as aforesaid; that a portion of the property was entered in the freight bills accompanying the property over the defendant's road from Suspension Bridge to Albany, as consigned to said Darling, Albertson & Rose, and another portion for J. A. B., New York; and that in the receipts taken by the defendant from the Hudson River road, the property is all described as marked J. A. B., N. Y. In other words, that the defendant had notice that D., A. & R. were the consignees—a fact which I have assumed to be established in the case.

By the delivery to the Hudson River road, the liability of the defendant terminated, unless it omitted to give the necessary instructions to the Hudson River Rail Road Company, as to whom to deliver the property.

The receipts taken by the defendants from the Hudson River rail road are the only evidence given on this point, and there is

no finding by the court on the question. This omission (if there was one) was a breach of duty and is not to be presumed. The freight bill which the Hudson River road sent forward with the property would be the best evidence of the omission. But this bill is not introduced, nor is any agent or officer of that road or of the defendant called to speak on the subject. It seems to me, therefore, that we must presume that the defendant accompanied the delivery of the property to the Hudson River Rail Road Company, with all such instructions as the law required the defendant to communicate. (*Newton* v. *Pope*, 1 *Cowen*, 109. *Schmidt* v. *Blood*, 9 *Wend*. 268. *Foote* v. *Storrs*, 2 *Barb*. 326. 1 *Cowen & Hill's Notes*, 298.)

The letters J. A. B. on the boxes would not enable the Hudson River Rail Road Company to make a proper delivery of the property; and I apprehend no company having any knowledge of its legal rights and liabilities would receive property and assume the risk of a wrong delivery, without other means of protection than such marks would afford.

The defendant must be held to know who the consignees were; and it is doubtless the law that they were bound to communicate this information to the Hudson River Rail Road Company, and that a failure to do so would subject them to such damages as should result from its neglect.

If we are right in presuming that the defendant performed its duty in this behalf, then this action cannot be sustained. If, however, we are mistaken in holding that the defendant must be held to have performed its duty, and that the burthen is thrown upon it to show that it communicated to the Hudson River Rail Road Company the name and residence of the consignees, and that in this case no such proof is given, it then remains to inquire whether on the evidence the plaintiff is entitled to recover.

Within the case of *Van Santvoord* v. *St. John*, the liability of the defendants as *carriers* had ceased, and their further liability, if any, was as forwarders. The complaint is not framed with a view to liability in that character, and I am not

prepared to hold that the complaint could, by amendment, be made to charge them in their character as forwarders. If an action was brought against the defendant as a forwarder, to recover for the loss of these goods, the complaint must allege the delivery of the property to the Hudson River Rail Road Company for transportation to New York, and that the defendant did not inform them that Darling, Albertson & Rose were the consignees; and that by reason of such omission the goods were delivered to the wrong persons, or otherwise lost to the plaintiff. The averments thus made must be proved. If, then, the question of pleading were out of the way, is there any proof in this case which would justify the finding of the facts necessary to support a judgment against the defendant for the omission suggested? There is not a particle of proof that the loss resulted from the omission charged. For aught appearing, the goods may have been stolen on their way to New York, or sunk in the Hudson river. The court cannot presume, in the absence of all evidence that there was a breach of duty on the part of the defendant, that such breach was the cause of the loss. The property being clearly traced in good order into the custody of the Hudson River Rail Road Company, and thus, as it would appear a perfect remedy given to the plaintiff, it cannot be necessary to infringe on the well settled principles of the law, to afford the plaintiff a remedy.

It is urged, by the appellant's counsel, that although there may be a right of action against the Hudson River Rail Road Company, yet an action may be maintained against the defendant under section 53 of the general rail road act. (1 *R. S. 4th ed.* 1249.) That section provides, that "whenever two or more rail roads are connected together, any company owning either of said roads receiving freight to be transported to any place on the line of either of said roads so connected shall be liable as common carriers for the delivery of such freight at such place." It may be assumed that the roads of the defendant and of the Hudson River company are connected, within

Place *v.* Butternuts Woolen and Cotton Manuf. Co.

the meaning of this statute. To recover, under this statute, against a company that would not otherwise be liable, the facts required to constitute the liability must be averred in the complaint. No such case is made in the complaint in this action, and it is quite obvious from the complaint and trial that no such case was contemplated when the action was commenced or tried. And the whole nature and form of the action cannot and ought not now to be changed in order to make the defendant liable for a loss with which it had no manner of connection.

The judgment must, for these reasons, be affirmed with costs.

[NEW YORK GENERAL TERM, November 4, 1858. *Davies, Clerke* and *Mullin,* Justices.]