SETH B. GROSVENOR, Respondent, *v.* THE NEW YORK
CENTRAL RAILROAD COMPANY, Appellant.

*Common Carrier—Delivery of Freight—Bailment—Negligence of Bailee.*

To establish the liability of a common carrier, it must be proved that the
property was actually delivered to and accepted by the carrier, or some per-
son authorized by him to receive the same. It is not enough that the prop-
erty is delivered upon the premises, unless the delivery is accompanied by
notice to the carrier, or his agent.

. The complaint in this action alleges, that in April, 1861, the
Plaintiff delivered to the Defendant, at Clifton Springs, a cutter,
to be carried by it to Buffalo, and paid the Defendant therefor,
which the Defendant agreed to do, and that, by the negligence
of the Defendant, it became wholly lost to the Plaintiff.

The answer denies these allegations.

The issue was tried in the Superior Court of Buffalo, before
Justice Clinton and a jury, when the following facts were proved :—

That the Plaintiff called upon the Defendant's depot agent at
Clifton, and paid him the freight on the cutter, and the fare of
his servant to Buffalo, and told him that he would send them
down in the morning, to go by the afternoon train.

The servant brought the cutter, by Plaintiff's directions, to have
it shipped to Buffalo, and arrived at the depot about six o'clock
in the morning, and placed it on the platform of the freight-house,
next to the railroad track, with one end next the freight-house,
and the other towards the track, and went back after the thills ;
that he returned in about an hour with them, and stopped in front
of the passenger depot, about six rods from the freight-house, and
saw the Defendant's baggage-man, one Hall, who, at the time,
was sweeping out the depot, and said to him : " There is some stuff
to go to Buffalo." He asked on what train ; to which he replied,
" The one o'clock," and then took the thills and laid them with the
cutter. He had not then seen the baggage-man do anything with

the freight, and did not ask for or take any receipt for the property. That Sutherland was the Defendant's agent there, and had been such agent for three years, and was alone authorized to receive and deliver freight, and resided in the depot. That Hall was baggage-man, and had never received freight, or given receipts therefor, except by his especial directions, and had no general orders on that subject. *That freight is always received and delivered at the east end of the freight-house.* The track runs east and west. There is a platform alongside of the freight-house, next the track, and comes within a few inches of a freight car on the track, which is used for receiving and delivering freight from and to the cars, when it is taken into or from the freight-house and weighed; and that *it is received from and delivered at the east end of the depot.* That the cutter, when on the platform, where it was left by Plaintiff's servant, could not be seen from the passenger depot. That the cutter, placed on the platform, as stated, *would project over it nine inches.* That two or three hours afterwards a car in *a passing train caught the cutter and broke it, and the first knowledge the agent had of its being there, was seeing it pass his office at the passenger depot on this car, broken.* That it was the invariable custom for the shipper to mark property and its destination before the Defendant received it, when he weighed it and ascertained the freight. And that the Plaintiff's servant did mark a box, which he brought with the cutter in the afternoon, before shipment, and said he wanted it to go to Buffalo.

At the close of the Plaintiff's testimony, and at the close of the evidence, the Defendant made a motion for a nonsuit, upon this ground—that upon the undisputed facts the Plaintiff was not entitled to recover ; which motion was denied by the Court, and an exception taken to the decision by the Defendant.

The jury found a verdict for the Plaintiff for $78.16, for which judgment, with costs, was entered.

The Defendant appealed to the General Term of that Court, where the judgment was affirmed.

The Defendant thereupon appealed to this Court.

*A. P. Laning* for Appellant.
*J. H. Reynolds* for Respondent.

MILLER, J.—I am of the opinion that the Court erred in refusing to nonsuit the Plaintiff upon the trial.

To render a party liable as a common carrier, it must be established that the property was actually delivered to the common carrier, or to some person duly authorized to act on his behalf.

The responsibility of the carrier does not commence until the delivery is complete (Angell on Carriers, § 129; Story on Bailments, § 532).

It is not enough that the property is delivered upon the premises, unless the delivery is accompanied by notice to the proper person. (Packard *v.* Getman, 6 Cow. 757; Tower *v.* U. & S. R. R. Co., 7 Hill, 47; Blanchard *v.* Isaacs, 3 Barb. 388; 2 Kent's Com. 604; 2 Parsons on Con. 654.) The liability of the carrier attaches only from the time of the acceptance of the goods. by him (Story on Bailments, § 533; 6 Cow. supra). To complete the delivery of the property within the rules laid down in the authorities, I think it is also essential that the property should be placed in such a position that it may be taken care of by the agent or person having charge of the business, and under his immediate control. It must be accepted and received by the agent.

It appears in the case at bar, that the cutter of the Plaintiff was placed upon the platform of the Defendant's freight-house, by a servant of the Plaintiff (the freight having been previously paid), to be transported to Buffalo.

At the time when it was thus left, a baggage-man in the Defendant's employment, who was then engaged in sweeping out the depot, was notified that there was some freight to go to Buffalo in the noon train. The servant of the Plaintiff testifies that he had seen this person receive and put freight on the cars, and at this time he apparently had charge of the depot, although the proof on the part of the Defendant shows that another employé was the real freight-agent, and the person with whom the contract

was made for the carriage of the property, and that the baggage-man had no authority to receive it.

Upon this state of .facts, I am inclined to think that the Plaintiff had established sufficient, primâ facie, to submit to the jury the question whether the baggage-man was authorized to receive the property, and whether the notice to him was of itself sufficient.

Persons dealing with railroad corporations and parties engaged in the transportation of freight, have a right to consider that those usually employed in the business of receiving and forwarding it have ample authority to deal with them.

It is enough to establish a delivery, in the first instance, to prove that a person thus acting received and accepted the property for the purpose of transportation ; and even although it subsequently appears that another employé was actually the agent having charge of this department of business, yet the company who sanction the performance of this duty by other persons in their employment, and thus hold out to the world that they are authorized agents, are not at liberty to relieve themselves from responsibility by repudiating their acts.  So far, then, as this branch of the case is concerned, it was, at least, a question of fact, to be submitted to the jury, under proper instructions, whether the baggage-man of the Defendant, to whom, it is claimed by the Plaintiff, the cutter was delivered, was the agent of the Defendant duly authorized to receive the same, and whether notice of its delivery was given to him as such agent.

But whether he was such agent, or the duty of receiving freight devolved upon another person, the Defendant could not be held liable, under any circumstances, without an actual and complete delivery of the property into the possession of the corporation, and under its control.   This, I think, was not done.

The undisputed testimony shows that the cutter was placed upon the platform, and that, within two or three hours afterwards, it was carried away and broken to pieces by a passing train of cars.   The fact that it was thus carried away evinces that it was carelessly exposed by the Plaintiff's servant ; that the destruction of the cutter was occasioned by his negligence, and that

the delivery was not as perfect and complete as it should have been.

The accident would not have happened had the cutter been placed beyond the reach of passing trains.

It was not enough that the agent was notified, to make out a valid acceptance and delivery.

The place of delivery was important, and it was equally essential that due care should be exercised.

Suppose the servant had left the cutter on the track of the railroad, and notified the agents, would the Defendant have been responsible? Clearly not, for the apparent reason that there was no delivery upon the premises—no surrender of the property into the possession of the agent.

Until it was actually delivered, the agent was actually under no obligation to take charge of the property, even if notified.

It is apparent that the Plaintiff was in fault in not delivering the property to the Defendant, and in leaving it in an exposed condition, which caused its destruction; and having failed to establish this material part of his case, he should have been nonsuited.

As a new trial must be granted, for the error stated, it is not important to examine the other questions raised and discussed.

Judgment reversed, and new trial granted, with costs to abide the event.

All reverse.