MAX SALINGER *v.* EDWARD SIMMONS and others.

(GENERAL TERM, THIRD DISTRICT, MARCH, 1870.)

The defendants as common carriers, received merchandise for transportation from the plaintiff, addressed to a consignee at W., which they carried to C., the terminus of their route, and delivered to an irresponsible warehouseman, a common agent in that respect, for several other carriers, and for themselves; from the premises of the warehouseman it was taken by a teamster, such being ordinarily the means of transportation between C. and W., and left, in the absence of the consignee, on his premises, with notice to, and in the presence of a member of his family; the consignee afterward refused to receive it, and notified the teamster thereof, who returned it to the warehouse of C., without notice of any kind to the warehouseman, where it was lost, and the plaintiff brought a suit to recover its value.—*Held,* that he was properly nonsuited.

There was a delivery to the consignee, and thereupon the defendants' contract was performed, and they could not therefore be held liable for previous negligence in delivering at C. to an irresponsible warehouseman; nor could the return of the merchandise to the defendants' agent, without notice as to which of his principals it was intended for, revive their liability.

THIS action was brought to recover the value of a cask of liquor, shipped for the plaintiff by the defendants, who were common carriers, from New York city, and consigned to one Sherman at East Windham, N. Y., and which had been lost after delivery into the defendants' possession.

The case was tried at a circuit in Greene county, before Mr. Justice PECKHAM and a jury, and the plaintiff proved a shipment of the cask on the defendants' boat, consigned to Sherman, as stated, at East Windham, a place distant some twenty miles inland from Catskill on the Hudson river; that Catskill was the northern terminus of the defendants' route, with reference to East Windham, and that the goods were safely delivered there into the charge of one Huntley, who carried on the business of a warehouseman and tavern-keeper under the same roof, and who acted as agent for the defendants, and of several other steamboat proprietors at that place. Huntley put the cask into his warehouse, subject to the call

Salinger *v.* Simmons.

or order of the consignee, according to his custom in such cases, and a few days after one Newman, a teamster, whose business it was to carry goods, took the cask, without the consignee's order, upon his wagon, carried it to East Windham, and there disposed of it, as stated, with other facts in the opinion of the court.

The court nonsuited the plaintiff, who duly excepted, and the case and exceptions were ordered to be heard in the first instance at General Term.

*James B. Olney,* for the plaintiff.

*Charles D. Ingersoll,* for the defendants.

Present—INGALLS, HOGEBOOM and MILLER, JJ.

By the Court—MILLER, J.   The evidence in this case establishes that the property in question was safely transported upon the defendants' steamboat to Catskill Point, which was the termination of the defendants' route as common carriers, and was there delivered to one Huntley, who kept a public house, and a storehouse or warehouse at that place, and who acted as the agent of the defendants and of other steamboats in receiving and delivering freight.  The defendants had no interest in the storehouse or warehouse; and the usual custom was to put all goods there which were landed at the Point for the consignees, and subject to their call or order.   There was no regular line of transportation between Catskill and East Windham, where the goods were to be forwarded; and a teamster, either on his own motion or otherwise, it does not exactly appear how, without any order or direction of the consignee, took the cask and carried it to the residence of the consignee, to whom it was directed, and delivered it there in front of his house and place of business in the presence of two of his sons, he being absent, and notified one of them that the cask was for his father.   Subsequently the consignee refused to receive the property, alleging as the

Salinger *v.* Simmons.

reason that he had never ordered it; and by his direction and at his request, the teamster brought it back and delivered it at the place from whence it was taken, to some person who was there; but the agent, Huntly, testifies that he did not know, and it does not appear that he did know that it was there. It disappeared and was lost.

The plaintiff's claim to recover in this action, is based upon the ground that the defendants were guilty of negligence; and unless this is made to appear, the action is not maintainable. I think the property was lawfully delivered at its place of destination at Catskill Point, the end of the defendants' route, and properly left at the store, or warehouse, which was a suitable place for its deposit, for the benefit and on account of the consignee. Up to this period of time, there was no act done by the defendants, which indicates negligence, and exposed the property to injury or loss. The deposit at the store, or warehouse, appears to have been in accordance with a well settled rule of law. When the consignee is absent at the place of destination, the carrier may discharge himself from further liability, by placing the goods in store with some responsible third person, at the place of delivery, for, and on account of the owner. (See *Northrop* v. *Syracuse R. R. Co.*, 5 Abb. N. S., 428; *Williams* v. *Holland*, 22 How., 137.)

In the case at bar, the goods were left with the agent, who was in the habit of receiving property; and had they been lost while there, and before they were removed, the fact that the agent was irresponsible, may, perhaps, have been urged as evidence of negligence, and have been entitled to consideration in determining the question of the defendants' liability. But as the goods were safely kept, and forwarded to the consignee by the earliest and most convenient mode of transportation, and as they were not lost at this time, I am inclined to think, that no question of negligence arises in the case. If there had been a regular line of transportation between Catskill Point and East Windham, the delivery of the goods to the next carrier on the route, with proper instructions,

would have terminated the defendants' liability. (*Hempstead v. N. Y. C. R. R. Co.*, 28 Barb., 485; *McDonald* v. *W. R. R. Corporation*, 34 N. Y., 497.) As there was no such line, nor any other convenient means of transportation, and as the one selected was entirely safe, there was no impropriety or negligence in thus forwarding the property to the consignee. It was one way of notifying him of the arrival of the goods. That it was entirely safe, is apparent from the fact that the property was safely delivered to the control of the consignee, so far as was practicable. That it was not accepted, was not the fault of the defendants, but of the plaintiff, or the consignee. For the misunderstanding between them, which caused a return of the goods and their loss, the defendants clearly are not liable. Nor, in my opinion, are they responsible, because the consignee directed the property to be sent back to Catskill, and because it was brought back by his order. I think that the duty of the defendants terminated certainly after the goods were delivered at the place of business of the consignee, if not before; and their liability cannot be renewed and resuscitated by a return of them to the storehouse, or warehouse of Huntley. If the consignee ordered the goods, then he is liable upon their delivery, and he cannot shift his responsibility by directing their return. If he did not purchase them, then the plaintiff was in fault in forwarding them to his direction, and has no good reason to complain of the defendants, because the consignee returned them.

There was no authority from the defendants, direct or implied, to return the goods to Catskill Point, and to make the defendants liable, at least notice should have been given that they were returned, and were to be taken back by the defendants in their steamboat for the plaintiff.

Huntley, the agent, was not aware of their being returned, and no directions were given as to what they were left for, or what was to be done with the property. Huntley was the agent for three different steamboats; and unless he was advised that the property was intended for the defendants, I

do not understand how they can be held liable for his acts. If it be said, that he should have notified the owner, the answer is, that the evidence does not show that he had notice of the delivery for the defendants, and hence they are not liable. Huntley, being the proprietor of the house where the goods were placed in store, became thereby the agent or bailee of the owner. (*Fisk* v. *Newton*, 1 Denio, 45.) In establishing the liability of a common carrier, it must not be overlooked that there must be an acceptance of the goods, and that the responsibility does not commence until the delivery is complete. It is not enough that the property is delivered upon the premises, unless the delivery is accompanied by notice to the proper persons. (*Grosvenor* v. *The N. Y. C. R. R. Co.*, 39 N. Y., 34, and authorities there cited.) The defendants were exonerated from liability after the goods were delivered to the consignee, and no steps were taken to bring them within the rule laid down in the case last cited, after they were thus discharged.

In no aspect in which the case can be considered, can the defendants be held liable; and the judge upon the trial, in my opinion, committed no error in his rulings, and properly directed a nonsuit. A new trial must be denied with costs.

