## JASON. WEEKS, PLAINTIFF, *v.* THE NEW YORK, NEW HAVEN AND. HARTFORD RAILROAD COMPANY, DEFENDANT.

*Railway company — duty of, to protect passengers — baggage.*

Upon the arrival of one of defendant's trains at New York, the. car in which plaintiff was a passenger was detached from the others and allowed to remain unguarded, while awaiting the arrival of horses by which it was to be drawn to the station. The plaintiff got up and went toward the door to ascertain the cause of the stoppage, when he was seized by three men who had just entered the car and robbed of securities of the value of over $16,000. In an action by him to recover the amount thereof from the company, *held,* that he was not entitled to recover.

The baggage for which a railroad company is responsible, includes only such articles as might become necessary, convenient or ornamental during the course of the passenger's journey, with such reasonable amount of money as would be required to meet his actual and contingent expenses.

A railroad company is not responsible for baggage never delivered to it, but retained by the passenger in his own possession and custody.

MOTION by the defendant for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict in favor of the plaintiff.

*Calvin G. Child,* for the defendant.

*Luther R. Marsh,* for the plaintiff.

DANIELS, J. :

The verdict in this case was for the sum of $16,685.47, which was the value, with interest, of certain bonds stolen from the person of the plaintiff while he was a passenger on one of the defendant's cars. The train, of which it was a part, had arrived near Twenty-seventh street, on Fourth avenue, in the city of New York. It had been there detached for the purpose of being taken a short distance by horses to the depot of the defendant. While it was awaiting the arrival of the horses, three men from the street went upon the forward part of the car, two of them being inside and the other remaining on the platform. The plaintiff was seated near the center of the car and went to the forward end to discover the cause of the detention. When he approached the two men his arms were seized by one who backed him toward the door, near which another was standing, who also seized hold of him, and with the assistance of the third, who then rushed in, he was robbed of his bonds. No person employed by the company was in the car at the time, and no precautionary measures had been taken by it to protect its passengers against pillage  Another robbery was shown to have taken place near the same vicinity, but whether it was before or after this one did not appear. Upon these facts the court ruled that the plaintiff was entitled to recover the value of the bonds taken from him, except one which was overdue and was afterward returned ; and the only point presented by this case is, whether that ruling was correct.

It appeared that the plaintiff carried the bonds in an inside pocket, and that he gave no notice to the defendant or any of its agents of the fact that he had them. They were in no way placed under the charge of the defendant, but they were solely and wholly retained by the plaintiff. He made no contract with the company other than that to be deduced from his purchase of an ordinary passenger ticket, and paid nothing for the safe carriage of the bonds in his possession unless it was included in the purchase-price of his ticket.

The contract included in that purchase undoubtedly bound the company to carry him safely and protect his person against injury, so far as that could be accomplished by the observance of the utmost degree of care and skill applicable to the business in which

it was engaged. The obligation was likewise imposed upon it of safely and securely carrying and delivering his baggage, so far as that might be intrusted to its care, and the only exceptions to its obligation for losses in that respect, were those which might result from public enemies and the act of God. But while this obligation was of so stringent a nature, it included, in a case like the present one, only such articles as could be appropriately denominated the baggage of the passenger. That extended to such things as might become necessary, convenient or ornamental, during the course of the journey, with such a reasonable sum of money as would be required to meet its actual and contingent expenses. Articles of merchandise, or samples of them, and large amounts of money are not, on the mere passenger's ticket, carried at the risk of the carrier. (*Jordan* v. *Fall River R. R. Co.*, 5 Cush., 69, and cases referred to in the opinion; *Merrill* v. *Grinnell*, 30 N. Y., 594; *Dexter* v. *Syracuse and Binghamton R. R. Co.*, 42 id., 326; *Dunlap* v. *Int. Steamboat Co.*, 98 Mass., 371; *Dibble* v. *Brown*, 12 Georgia, 217.) The bonds which were taken from the plaintiff were not within the reason, and consequently not within the protection of the rule defining the degree of this responsibility.

Even if they had been delivered as a part of his baggage to the agents of the company, it would not have been liable for their loss, as a part of such baggage, without notice of the fact that it included them, or a special agreement was made including the risk of their safety. Merely delivering them to the company as part of the passenger's baggage would not, under the ordinary obligations arising out of the sale of a passage ticket, render it liable for their safety; and as the carrier could not be made liable for the loss of such property carried in that manner, it would seem to follow that the same result should be sustained where it remained about the passenger's person, and in no way committed to the custody of the carrier. In that case, the property is retained in the charge of the passenger himself, and as the carrier has no means by which it can secure its safety, it should not be liable for the loss of it, if that should happen to occur. For that reason, the carrier was held not to be liable for the loss of an overcoat not delivered to its agents, but retained by the passenger, in the case of *Tower* v. *Utica and Schenectady Railroad Company* (7 Hill, 47), and in

*Grosvenor* v. *New York Central Railroad Company* (39 N. Y., 34), the general principle was approved, rendering it necessary to support the liability of the carrier, that the property lost should be placed in its custody. For that reason, chiefly, the passenger was prevented from recovering the value of the contents of his portmanteau, which he had taken into his apartment with him, and carelessly left there during the period of a temporary absence. (*Great Western Railway Co.* v. *Talley*, 23 L. T. R., 413.) And in *The First National Bank* v. *Railroad Company* (20 Ohio, 259) it was held to preclude a recovery for money carried upon the person of a passenger, and destroyed by means of an accident to the train in the course of the journey. It was there said that the passenger " could not reasonably have supposed that the defendant, by selling him a ticket and agreeing to carry him and his baggage with due care, contemplated incurring a liability in respect to a large sum of money of which defendant had no knowledge, and which he was carrying solely for the purpose of transporting it from one place to another." (Id., 280.) And the same disposition was made of a claim for the loss of money carried to purchase clothing, in *Hicox* v. *Nan. R. R. Co.* (31 Conn., 281). No authority has been cited, nor has any been found, extending the liability of a carrier of passengers or their baggage.so far as to include a loss incurred under the circumstances shown in this case. But the rule maintained by all of those which have been consulted exonerate the carrier. It did not, in any form, contract or undertake to carry the property which was taken from the plaintiff's person. He did not request it to do so, nor to afford him special protection in his own effort to do that. But he took the exclusive care and carriage of it himself, and it was to his own failure, and not to that of the company, that the loss was attributable. If the defendant could be held liable for this loss, then there would be clearly no limit beyond which the liability could not be extended for property or money carried upon the person of the passenger, and the rule limiting the liability of the carrier to a reasonable amount of money to meet the expenses and conveniences of the traveler, would be so completely evaded as to be practically nullified.

Authorities have been relied upon in support of the ruling at the Circuit, decided upon the general obligations of the carrier to

exercise the utmost vigilance in maintaining order and guarding passengers against violence. They are mostly referred to in the case of *Putnam* v. *Seventh Avenue Railroad Company* (55 N. Y., 108). But neither of these authorities go far enough in the principle maintained by them to support this recovery; and the same thing is true of *Croaker* v. *Chicago, etc., R. R. Co.* (36 Wis., 657), where the company was held liable for the insulting conduct of its conductor to a female passenger. (See, also, *Baltimore and Ohio R. R. Co.* v. *Blocker*, 27 Md., 277.)

So far as injury or insult to passengers may be probable or reasonably anticipated, the carrier is certainly bound by its obligations to guard against them. It is bound to protect the passenger against injury, so far as its occurrence can be considered probable, and in this case there may have been remissness in not having one of its servants or employes upon this car at the time of the robbery. But if that was a careless omission, the plaintiff's loss was not occasioned by it. It occurred because of his own injudicious conduct in carrying this large amount of securities about his person, and in that way exposed to loss by theft and robbery. His property was not lost by reason of any carelessness of the carrier, because it had been placed under no obligation to observe care for its preservation, but by an intervening cause not produced or set in operation by any act or omission on its part, and the loss was too remote to constitute a valid claim under the principle already referred to, obligating the carrier to protect the person of the passenger, so far as injury to him could be reasonably suspected or anticipated. (*Ryan* v. *N. Y. C. R. R. Co.*, 35 N. Y., 210.)

No such consequence could be contemplated from the omission to do that, as a robbery of this description, because it was not to be supposed that valuable securities would be carried in that manner about the person; and as no special contract was made binding the carrier for their safety, that risk was the passenger's and not the defendant's.

A different rule has been applied to the liability of innkeepers. They have been held liable for whatever the guest may have with him, whether goods or money, which are lost at the inn. It arose out of the obligation to secure the safety of the guest, and whatever he had with him, and for that the innkeeper was entitled to adequate

compensation. (*Berkshire Woolen Co.* v. *Proctor*, 7 Cush., 417.) But this rule has no application to the case of a carrier of passengers, as will be seen by the cases referred to in the opinion in this case (id., 427) ; and even that has been materially modified by statutes in this and many of the other States. (Laws of 1855, 774, chap. 421 ; Laws of 1866, vol. 2, 1415, chap. 658.)

The carrier may be rendered liable for the loss of valuable securities and money to any amount. But, for the purpose of securing that result, the property must be delivered into his or its custody to be carried and transported for reasonable hire, and not retained upon or about the person of the passenger unknown to the carrier or any of its or his agents.

The verdict should be set aside, and a new trial ordered, with costs to abide the event.

Davis, P. J., concurred ; Brady, J., dissented.

Verdict set aside, new trial ordered, costs to abide event.